I think it pleases the Court, Taryn T. Steinhardt for Pellant-Cobalis. I think the overarching issue, as far as Pellant is concerned, is that the dissolution order that we're trying to overturn, and got waylaid by an equitable mootness motion and a granting of that, that the order we're trying to overturn is constitutionally void. Are we, I just want to make sure that you're arguing the right case. Okay. I'm a little confused about which is which. I'm arguing 78 and 81. Okay, fine, go ahead. If I could just jump in, because I think this will help me with both cases. I'm going to fast forward to the next case for a moment. Let's imagine that we were to rule against you in that case, just so I can understand the relationship. If we were to rule against you in the other case, which I will call the 14 case, what happens to these cases? Do they just go away? Well, the other case has got two causes of action. One of them involves the dissolution order, which is cause of action two. And one of them involves some usurious interest, so that doesn't have anything to do with this case. Okay, so they're independent is what you're saying. I'm saying the first cause of action, we're alleging that usurious interest was paid to the tune of several million dollars, and we're seeking damages for that. The second cause of action is for abuse of process on the ground that this dissolution order was obtained. We're saying that the dissolution order that was obtained, there's no statutory or case authority for it, so there's no subject matter jurisdiction, which makes it unconstitutional. It was obtained in motion in the main bankruptcy case rather than through an adversary proceeding. It was required to be obtained through an adversary proceeding, and the relevance of that is in an adversary proceeding, you file a complaint in the main case, and the complaint has to be personally served on cobolus, or as a motion in the main case, once his attorney or its attorney has appeared, may be served by mail. Owens is asking, is, you can correct me if I'm wrong, but I think you're asking about the 8-1 case. If we decided in the 8-1 case that in fact the dissolution goes forward, does this whole  Is that basically what you're saying? Well, and just understanding how all three of these cases fit together. In other words, not just these two, but the third one. Well, okay, the third case, the 7-6 case, the one that Right, the 7-6 case. Yes. That's what I meant. That's coming up on a 12-B-6 motion. Right. To review that. The only relevance of that case to these 78 and 81 cases is the second cause of action of that complaint involves the same order, this dissolution order. So I see. So the position, if I'm correct that the dissolution order is constitutionally void, we don't even have to be on appeal to get it set aside. We could have avoided taking an appeal and just made a motion. Well, I mean, that's just plain wrong. I mean, in general, the fact that something is unconstitutional doesn't mean you don't follow ordinary procedures and you can't come back 20 years later and say it was constitutionally void. I think, I disagree. I think since a constitutionally void judgment or order is a nullity and can be collaterally That's the problem. It's not a nullity. That's not correct, counsel. The one thing, there's constitutional error and there's jurisdictional error and they're different things. I mean, if someone says my Fourth Amendment rights were violated 20 years ago, that's unfortunate, but there's nothing we can really do about it now necessarily. Well, as I read the law, a constitutionally void order can be attacked at any time. All right. Can we just talk about these, the very technical issues in these two cases? As I understand it, the district judge, the district judge never decided whether the appeal was timely as such. He only decided that the issue was equitably moot. Is that right? Yes. Okay. And what issue was equitably moot? The question of whether it was timely or the underlying question? It was unclear because the motion to declare equitable mootness was made in the case for a time where we were appealing the denial of our motion for an extension of time. They should have made it in the motion where we were seeking to overturn the dissolution order, but they didn't. They made it in the wrong case. So I assumed that the district court said, well, they made it in the timeliness case, but I'm saying that the appeal to turn over the dissolution order was equitably moot. Okay. And what is your argument about why it's not equitably moot? Because Let's assume we're talking about the, I mean, my understanding, best understanding would be, well, the underlying issue is equitably moot, so it doesn't make any difference whether the appeal was timely or not timely. I think that's what the court meant. All right. So what's wrong with that? Well, first of all, the order is constitutionally void. It was made without serving my client with Well, that's not true. You admit that you certainly had knowledge of it, and so it's not constitutionally void, and you have a technical reason why you think it didn't follow the statute. But in terms of whether you knew about it and had a chance to object to it and all that, you did. Okay. Well, it wasn't served properly. Right? Isn't that right? Yes. Okay. But it wasn't served properly. Well, it wasn't served according to statute, but it's not constitutional. All right. There is no statute. All right. So let's go on. What other reason is it not equitably moot? Because it's not equitably moot because relief can be granted by reversing the order. And it won't harm anything. The only thing that was done Which one? The order? The dissolution order? Correct. No progress was made toward dissolving the corporation. There's no harm to anybody, such as a Chapter 11 plan, where things were sold, monies were paid, real estate was acquired. All those things happen in a plan. None of that happened. This order, just standing alone, which one of the cases you said for me to read said you have to take each case by itself, standing alone, it just said, dissolve this corporation as soon as possible. But it didn't stand alone. That's the problem. It did stand alone. We made a motion to overturn it in the court below, separately. There were four motions for reconsideration, and this motion was made separately because this is the only one that involved constitutional issues. So this was separated, as were three other ones. Counsel, one of the factors under the Thorpe case, which for equitable mootness, talks about the diligence of the party seeking to undo the order here. And can you talk to that? Because they're going to stand up and they're going to talk about how there was a lack of diligence and I know there's something about the last day the appeal was filed, the attorney was hired, and someone didn't have an account to file things with the court and they had to use someone else's account number. Can you speak to that? Sure. Let me quote from their brief on page 14. Equitable mootness is established when appellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the bankruptcy court and, and have permitted such a comprehensive change of circumstances to occur as to render it inequitable for this court to consider the merits of the appeal, Henry Roberts Farms. Let's get back to the first part that I was asking you was, what did your side do to act diligently to avoid this situation? Nothing. You were not diligent? No. But the and didn't happen. The and was, by not acting diligently, we permitted a comprehensive change of circumstances to occur. We didn't. So it's your view of the law that you can literally act, I don't know what the antonym for diligence is, but undiligently and just do nothing and as long as it shakes out a certain way, whether there have been changes or not, at any time you can get back in and undo the order. Yeah, because the purpose of equitable mootness is to protect people that things happened in pursuing a plan or pursuing an order that cannot be unwound on appeal. So then you're reading of Thorpe then is that there's really only one factor, not four. No. Because you've said the only thing that matters is as long as you can put the puzzle back together. Well, I'm reading Thorpe in light of the language I just read and a bunch of language I quoted in my brief that it doesn't make any difference if you don't seek a stay, if it doesn't cause a comprehensive change of circumstances to occur so that this court cannot reverse the order you're seeking to reverse or grant relief. Okay. Your time is up. We'll give you a minute of rebuttal. Thank you very much. We have two of you.  There's two of us, so we're going to tag when you've had enough of me, I'll run away. No, we're not going to decide that you are. So when you want to switch over, go ahead. Okay. I don't want to belabor the points here. We think our papers speak for themselves. Oh, I'm sorry. That was rude. My name is Nicholas Camiotti. I'm with the law firm of Bressler, Emory & Ross. And you are representing? YA Global Investments. Okay. And thank you for... Now, the one thing that it seems to me that he's probably right about, I don't know if there's anything else, is that Thorpe can't mean that not seeking a stay just by itself is enough because if he didn't seek a stay and nothing happened, then presumably it wouldn't be equitably moot, right? I think that you can read that into the case. It has to be. Yeah. Because, I mean, the assumption has to be you didn't seek a stay and something happened that could have been avoided by the stay. Otherwise, it doesn't make a difference. Correct. But I think that it is a little bit disingenuous to tell the court that nothing happened. All right. So that's the question. So the question is, the dissolution... He's trying to pull the dissolution order out of these two other... out of the sale order and the settlement, right? Correct. And I think that it's important, just briefly, for the court to understand and appreciate that this is not just an isolated order that happened after no litigation. We're talking about a litigation that began in 2007. We've went through numerous different attorneys on appellant side. Every time there's new attorneys, a different theory came into place. This order that they're trying to appeal is a result of the failure to adhere to their own plan in the bankruptcy. So everything that happened thereafter is the result of their own inactions, which included the dissolution. And the dissolution order, the first, there was the November sale order. At that point, in November 2011, all of the assets were set for auction. The sale took place. The only assets of the corporation are gone. Cobolis only exists right now to sue my client. That's literally the only thing that they do, is sue my client. So to say that there is nothing else happened, well, they don't own their patent anymore. They can't sell the product that they tried to sell. They don't own the rights to it. So the idea that nothing happened is just not true. The one thing that didn't happen was the dissolution. That's Mr. Golden, I think, will speak to that. But I believe paperwork was signed and the company was liquidated. So whether it was dissolved or liquidated, I think we're talking about different words. Whether it was papers formally filed with the state of Nevada, that was out of our hands. My clients adhered to the court's orders and have done nothing contrary to those orders and have been sued constantly in this forum in New Jersey, in Orange County, every which way sideways, and we just really are asking the court to put an end to it. Because this has been going on since 2007. This company has no assets. There's no grounds to go back and undo all of the various decisions and start this case over again. There are not. I'm happy to answer any further questions, give additional color. But I really think our papers speak to it. And I don't want to bore you and walk through my timeline and all of the various things. But I think here, we were directly on point with this fact that there was no diligent attempt to seek a stay. And- But that has never, I don't understand the district court who have ever ruled on that. The what, I can- I do not understand the, oh, as far as the stay, yes. With regard to the late appeal, the district court's never ruled on that. Is that right? I would have to look offhand. There's been a lot of filings here. No, but- And I can't recall whether or not, I would not take everything at face value. I would want to look at that before I make a representation to the court, whether or not they actually ruled on it. Because it's my understanding they affirmed everything. They went to equitable mootness instead, maybe in the interest of getting everything over with. Maybe they didn't speak to it. But I mean, they affirmed Judge Alpert's ruling entirely. So- On equitable mootness grounds. Correct. But I understood that they affirmed it. They didn't parse what they affirmed. But I would want to look at that order first before I made that representation. Well, you should have looked at it before you got here. It's some materiality. No, I did. It's just that there were a lot of different orders and portions of it. Do you have anything else for me? Any other questions? He's angling to get up there, so. Okay. Thank you. I apologize if I was disruptive by doing that. I wanted to be ready, not disruptive. I remember being a lawyer in that position and feeling very restive. And may it please the court, my name is Jeff Golden of LaBelle Weiland Golden Friedman on behalf of Venetta Cosmolo, the trustee. And although both of us enjoy appearing for the Ninth Circuit, both of us just want to be helpful. So we don't want to, it's not that either of us need to have more time. To get specifically to the facts. I gather it is correct that the district court never actually ruled on the timing question with regard to the appeal. I'm not aware of them ruling on that specifically, Your Honor. Presumably it's not a jurisdictional question as it might be if it was an appeal to us. Is that right? It. It's not, that kind of a timing question, I don't know this, but no one seems to be thinking it's a jurisdictional question. Certainly the district court didn't. Yeah, I don't, I think that's probably correct, I don't know, I think that the. So with regard to the equitable mootness, is your position that we don't look at the, that we shouldn't be looking at the dissolution question separately? And that's, but rather in the context of the entire plan and that's why it's equitably moot, or is it that the dissolution issue itself is equitably moot? The dissolution issue is subsumed in the actual orders that involve other things. A sale order provided for the dissolution. The settlement agreement had a provision in it that was approved by the court regarding the dissolution. And the issue on this- Has the dissolution ever occurred? Your Honor, I don't know, but if you look at what the settlement agreement required, it did not require, by language in the agreement, that the dissolution occur. What was required, and obviously this was a deal between the trustee and the estate and the other parties, was that the trustee execute the document of dissolution. And then I believe it was to submit it to YA Global. But with respect to- But it wasn't his problem, it's your problem, so no. Well, I don't think it's either problem with respect to the appeal. Because again, Your Honor, the issue is, for mootness, etc., is were the things that were contemplated in the order in the agreement carried out? The thing wasn't the dissolution, the thing was the estate executing the certificate of dissolution and tendering it. And that thing occurred, that was the obligation of the estate in this bundle of consideration. Why didn't somebody just say, I mean, that sounds logical, and therefore the corporation may or may not be dissolved, and he may or may not be able to pursue the other case, and that's his problem. And a separate problem in the other case. But your argument is that we don't know if the corporation's been dissolved or not. And it doesn't matter for this purpose, but you know. Correct, and it doesn't matter from the trustee's perspective, because she did what she needed to do to get the consideration for the other case of what, who has standing or doesn't. It's irrelevant to the trustee whether it actually got dissolved or not. What's relevant is that she performed what the estate, the obligations the estate needed to. My position is everything in the settlement and sale order happened, and that's all that matters, and that can't be redone, period, at the end. Yes, Your Honor. And whether the corporation was or wasn't dissolved is a separate matter that's not before us at this point. Not relevant, I believe, to this appeal, nor actually relevant to the trustee, Your Honor. Does the trustee ever have authority to execute a dissolution? I believe- I'm curious. I believe the trustee does. Under Section 323 of the Banksy Code, the trustee is the sole representative of the entity. Right, why didn't that happen here? Why was there an intermediate step? By intermediate step, Your Honor, I just want to be sure I understand your question. Of just signing the dissolution? Yeah. To- Filing it. The truth of the, well, I don't like that, the way that says. The reality is, Your Honor, is that when I represent trustees, and I'm a trustee myself, you don't want to create more obligations that you cannot insure. So, California has a bunch of, you know, whether California actually dissolves the company or doesn't dissolve the company, sort of out of our hands. Fair enough. So, I try to minimize the obligation of the estate, but be specific. Your interest is in the assets, the details of what happens after that. It's like people ask me to transfer a liquor license, and it's like I can't guarantee what's going to happen. I can't guarantee a dissolution. And- Yeah, I can say about all this is you sure could have written shorter and more persuasive briefs, if you had simply said that, because the briefs go on and on and on about how it had to be dissolved in order to, for equitable purposes, and so on and so on. What you're saying now is a lot simpler. I, I apologize, Your Honor, for confusion that way. Okay, your time is up. Thank you, Your Honors. Your Honor, may I have some time to respond? You have a minute. You don't have any time left, but I'll give you a minute. Okay. So what about that? I mean, they're basically saying, you know, they don't know if the corporation's dissolved, but that's not this case. Well, the order that I'm trying to get reversed says that the, the trustee shall dissolve this corporation. No, it says the trustee shall file a certificate, sign a certificate, which he did. No, no, Your Honor, it doesn't say that. There's a settlement agreement that says the trustee shall file a certificate, and that settlement agreement was approved by what we call the settlement order. Then there was a sale order tucked into one paragraph. Fine, but it's there, so, so then what? But it's a different order. If there's no order that says that she has to actually go ahead and get it dissolved, then how can you get it reversed? There's no order. Your Honor, there is an order. What order is that? That's called the sale order. It's a paragraph in the sale order, which is the subject of this, this appeal. That says, not what the settlement says. It says that the, that the trustee shall cause the corporate existence of Cobalus to be dissolved as soon as reasonably possible. And the trustee cannot do that. And the order says how she does that, which is just file this piece, sign this piece of paper. The, no, the, the, that's what they're saying. But when this dissolution order came to pass, that's what stopped my client from being able to sell stock, because they can't legitimately sell stock when their corporation. Why have them sell stock when they don't have any assets at all for anything? They've got an asset. These cases are assets. They could use money to prosecute these cases. Okay, your time is up. Thank you very much. May I just say one more thing? Sure. That the only thing that's happened, according to Mr. Camiotti, is that things have happened to my client. Their assets were sold, et cetera. But nothing's happened to any third parties that were relying on the order. We're trying to get reversed. And that's the comprehensive change of circumstances that prevents this court from fashioning an order on appeal. It's things that happen to third parties, not things that happen to the bankrupt debtor. Okay, thank you very much. These cases, numbers 13-57078 and 13-57081, are submitted. And we'll go to the last case of the day, the other Cabales case.
judges: Berzon, Owens, Davis